McKenzie et al. vs. Bacon et al.

---

No. 10,251.

AMELIA McKENZIE ET AL. VS. GABRIELLA BACON ET AL.

Under the judgment dissolving the sale of an immovable as an effect of the dissolving condition, express or implied, for non-payment of the price, the evicted vendee owes rents and revenues to the owner who has evicted him, for the whole time of his possession, and not from the date of the suit for dissolution only.

McKenzie et al. vs. Bacon et al.

As such a judgment results from the default of the original purchaser, the dissolution of the sale depended upon an event happening at a date posterior to the contract, and not affecting its vitality *ab initio*, and of which the evicted vendee had no control.

Hence his good faith is not affected by the happening of the event giving rise to the dissolution of the sale. or by the institution of the suit which led to the application of the resolutory condition. In such cases the question of good or bad faith is not involved in considering the rights or obligations of the evicted vendee.

In determining the right of the evicted vendee to recover the value of improvements placed by him on the property during his possession, ordinary repairs necessary to the enjoyment of the object sold, cannot be classed as improvements.

APPEAL from the First District Court, Parish of Caddo.
*Taylor, J.*

*Young & Thatcher* for Plaintiffs and Appellants.

If the buyer does not pay the price the seller may sue for the dissolution of the sale. C. C. 2561.

The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed. C. C. 2045.

A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance. C. C. 2046.

The resolutory condition operates a dissolution of the sale and replaces the parties as they stood before. The vendor takes back the property, and all its revenues since the sale are restored to the vendor, and on the other hand the vendee takes back the price with interest. Civil Code, Art. 2045, 2046, 2561; Johnson vs. Bloodworth, 12 Ann. p: 699; Citizens' Bank vs. Cuny, 12 Rob., p. 281; 6 Ann. p. 2; 23 Ann. p. 354; 24 Ann. p. 537; Pike vs. ——, 39 Ann.

The purchasers from the original vendee are bound to take notice of the defeasible title of their vendor; they are affected by the resolutory condition and are bound in respect to the property they hold, precisely as the original vendee was bound. See Johnson vs. Bloodworth, 12 Ann. p. 699; 32 Ann. 463.

A third vendee stands in no better position than the original vendee when a sale is dissolved for non-payment of the price. The vendee "could only cede the rights he had and in the condition they were at the time." 8 La. 83.

The rule that even possessors in good faith are not accountable for revenues prior to demand is not without exception.

Where a buyer is evicted he has the right to claim against his seller. First. The restitution of the price. Second. That of the fruits or revenues when he is obliged to return them to the owner who evicts him." C. C. 2506.

To preserve the rights of the vendor, under the resolutory condition, registry is not necessary. 12 Ann. 699; 32 Ann. 461; 28 Ann. 598.

The effect of the resolutory condition is that a *restitutio in integrum* must be made. The vendor takes back the thing sold with its revenues. The buyer takes back the price with interest. 28 Ann. 739.

The third vendee takes only such title as his vendor had and takes it *cum onere.* 28 Ann. 598.

Defendant cannot recover for improvements put upon the property after demand. 14 Ann. 340.

McKenzie et al. vs. Bacon et al.

Ordinary repairs necessary for the enjoyment of the thing are not improvements that the defendant can recover for.   14 Ann. 233; 3 La. 398.

*Henry C. Miller* and *F. L. Richardson* on same side.

*C. J. & J. S. Boatner* and *Alexander & Blanchard* for Defendants and Appellees:

The resolution of a contract of sale for non-payment of price, is an enforcement, not a recission of the contract.   32 Ann. 463; 12 Ann. 699; 11 Ann. 654; 14 Ann. 340; 24 Ann. 537.

The obligation to account for fruits and revenues flows from the contract and is binding on parties and privies thereto.   C. C. 1780, 1781.

As between the vendor and vendee, the effect of the enforcement of the resultory condition is a *restitutio in integrum.* This is simply a part of their contract.   But as to third persons, not parties to the original contract of sale, their rights and obligations are to be determined by the general rules of law applicable to all purchasers in good faith.

Such a person takes the property subject only to the liability that may have it taken from him in case the price due to the original vendor is not paid, but he does not assume, nor is he liable, for the purely personal obligation of the original vendee, to restore the fruits and revenues from the date of his possession.

The rights of a purchaser in good faith to the revenues up to judicial demand, are not confined to petitiory and possessory actions alone, but is a broad principle of equity of universal application.   39 Ann. 1021; 38 Ann. 150; 7 Ann. 252.

---

The opinion of the Court was delivered by

POCHÉ, J.   This case is the sequel of the controversy between the same parties, which was decided by this court in the early part of last year and is reported in the 40th of Annuals, p. 157.

In that case the demand by plaintiffs involved the dissolution of the sale of a cotton plantation on account of non-payment of the purchase-price, and the judgment was in their favor, dissolving the sale to the extent of four-fifths interest therein, allowing to the evicted defendants credit to the extent of four-fifths on the sum of $5000 originally paid on account of the sale, with legal interest from the date of said sale, and remanding the cause for trial on the demand for rents and the counter-demand for improvements placed on the property since the sale aforesaid.

The trial below was confined to the conflicting claims of plaintiffs and of John Chaffe & Sons, the vendees in possession of the property at the date of the judgment dissolving the sale thereof.

These defendants, appellees herein, had purchased the property on December 31, 1879.

Plaintiffs prosecute this appeal from a judgment which held the Chaffes liable for rents from the date of the institution of the suit for the dissolution of the sale, with legal interest, the four-fifths of which amount to $2676 13, and allowed them credit for improvements and taxes, the four-fifths of which aggregate the sum of $2819 12, thus

making plaintiffs debtois in the sum of $142 99 in the adjustment of the respective claims of the parties for rents and revenues and for the value of improvements.

The discussion between opposing counsel suggests two questions for solution :

1.  Can the evicted vendee, in the action on the resolutory condition, who held under a chain of titles from the original or first vendee under the dissolved sale, be held liable for rents for the whole time of his possession, or is he liable only from the date of the suit ?

2.  What are the condition, nature and real value of the improvements which appellees had placed on the property ?

### I.

The principles which controlled the decision of this Court in dissolving the sale for non-payment of the price are derived from the following articles of the Civil Code :

Article 2045. " The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed."

" It does not suspend the execution of the obligation, it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."

Article 2046. " A resolutory condition is implied in all commutative contracts, to take effect in case either of the parties do not comply with his engagements ; in this case the contract is not dissolved of right ; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case will permit, demand a specific performance."

Article 2561. " If the buyer does not pay the price, the seller may sue for the dissolution of the sale."

Article 2130. " Obligations are extinguished :  *  *  *  by the effect of the dissolving condition, which has been explained in the preceding chapter."

Article 2041. " The condition being complied with, has a retrospective effect to the day that the engagement was contracted."

As consequences of the decree heretofore rendered by this Court in the case, the first or immediate effects to result from an action on the dissolving condition have been practically applied, and have become accomplished facts ; it has been decreed that the buyer has not paid the price ; or, in other words, has failed to comply with his engagements, hence, on the demand of the seller, the contract of sale has been dissolved, the seller is to take the property, and he is held to restore the

McKenzie et al. vs. Bacon et al.

five thousand dollars which he had received, and the result of the judgment, in its retrospective effect is to annihilate all the rights of ownership, in all successive vendees under the original sale, as though the contract or obligation *had never existed.*

But in receiving their property, after the lapse of eighteen years, during which time it bore fruits for the benefit of the various and successive possessors thereof, the sellers are not placed in the same state or condition as though the sale had never taken place.

They are entitled to, and they must be judicially vested with, the right of recovering the fruits of the property during the whole time that they were out of possession, or otherwise the full effect of the law is not administered or realized in so far as their legal rights are concerned. Hence flows the obligation of the original buyer and of each successive vendee to return to the seller the fruits or revenues which the property bore to them respectively, in order to place the latter in the state or condition which he would have occupied had the sale never taken place.

To accomplish that result was the object in view by the court remanding the cause "for the sole purpose of determining the respective demands of the parties touching the rent and revenues of the property and the reimbursement for improvements made thereon since the sale aforesaid."

It would, therefore, seem that the contention of our learned brother of the district court and of appellees counsel, for the proposition that a different rule applies to the obligations of a subsequent vendee to that which seals the fate of the original purchaser, can find no sanction under the plain meaning of the law, and is in point of fact in antagonism to the theory of the former opinion which has now become the thing adjudged as to all the parties to the controversy.

In that case the original purchaser and all the vendees under his title were made defendants in the cause, and the judgment therein rendered affected them all alike; they were all treated, and under the law they must be dealt with as forming together one identity; the title sought to be annulled, and it thence follows that by the effect of the judgment all their respective and successive purchases were annulled and dissolved, and that each and all of them must contribute to the acts necessary to place the sellers in the state or condition in which they would have been if the first or original sale had never existed.

In the case of Mortee vs. Roach, 8 La. 81, the contention involved the right of the seller of property to demand the dissolution of the sale for non-payment against the buyer's syndic, to whom the insolvent had surrendered the property, and the defense rested on the ground that the

surrender had divested the buyer or insolvent of his possession. The defense was rejected for the reasons that:

"The insolvent debtor not having paid the price was not the absolute owner of the slaves; and his right to the property was, therefore, not indefeasible."

"The cession or surrender of the insolvent debtor's rights, for the benefit of his creditors, could not, and did not change the character and nature of those rights. They remained the same, for the debtor could only cede the rights he had, and in the condition they were at the time. What was conditional and defeasible in his hands did not become absolute and indefeasible in the hands of his creditors. * * * The slaves in controversy not being the absolute property of the ceding debtor, and his defeasible right to them being annihilated by the rescission of the sale, it follows they make no part of the property surrendered. * * *

Now, can it be thought for one moment that if the plaintiff in that case had made a demand from the syndic for the hire of the slaves in question, if he had proved that they had earned wages during the syndic's possession, and that the latter had collected the same, the court would have hesitated to order the reimbursement of such fruits? Such a decree would have followed as a logical sequence from the language used by the court in connection with the positive mandates of articles 2045 (2040) and 2041 (2036) of the Code.

Similar views were expressed in the leading case of Johnson vs. Bloodworth, 12 Ann. 699, in which it was held that: "The unpaid vendor of a slave sold by private act *unrecorded* may enforce the implied dissolving condition against his vendee to the prejudice of the mortgage creditor of the latter."

These rulings were followed in the late case of Stevenson vs. Brown, 32 Ann. 461, in which the following principle was announced: "Nonpayment of the price constitutes a resolutory condition in the contract of sale, and its effect is in no manner affected by the fact that the vendor has failed to preserve his privilege or mortgage by registry." It might as well be noted here that some relief is sought by the appellees in the instant case from the fact that sometime before Chaffe's purchase the mortgage which secured the notes representing a portion of the original purchase price of the property had been canceled. But that argument is answered by the theory of the decision just referred to, a theory which, after all, flows naturally from the very laws regulating the subject-matter, and which pervades our entire jurisprudence on the question. It was said in the case last referred to, and it had always been previously held, in actions on the dissolving condition that: "The question of

registry has nothing to do with the case. The right of resolution is an independent substantive remedy, and is in nowise dependent of the existence of a mortgage or privilege."

But, as we have before remarked, the line of argument followed by appellees' councel, and adopted by the district judge, goes truly to the first or immediate effects of the dissolving condition, which have become *res adjudicatæ* under our previous decree, and is a vicious departure from the only line of discussion to be followed on this point.

What we have said leads to the conclusion that the defendants, Chaffe, are liable for rents and revenues. A portion of that liability is conceded in the judgment below, but it is limited to the date of the suit, and not measured by the time of their possession. And that conclusion rests on the theory that they owe rents only from the time that they became possessors in bad faith. As they are shown by our previous judgment to have acquired only a defeasible title, depending upon some event posterior in date to the original contract, not affecting its original vitality, and over which they, as subsequent vendees who had paid their purchase price, had no control, to-wit, the payment of the price by the original purchaser, it follows that the good faith of their possession could not be affected by the happening of some subsequent events which they could not shape or control. Hence the good faith of their possession was not affected by the institution of a suit predicated on the default of their remote vendor in their chain of titles. It therefore logically follows that the question of good or bad faith of any of subsequent vendees under an eviction resulting from the dissolving condition is not involved in the consideration of their obligation under the law to contribute to the *restitutio in integrum*, by restoring the fruits which they have respectively reaped from the possession and enjoyment of the property.

Hence, in the case of the Citizens' Bank vs. Gillespie, 35 Ann. 779, it was said: "An action for rent and revenues of immovable property against an evicted possessor, can be maintained against the possessor only, and for the time of his occupancy."

In the instant case, the representatives of the original purchaser, whose default is the primeval cause of the whole controversy, are not before us, and hence we cannot adjust the claims of subsequent vendees *inter se*, and ultimately against said purchaser; but the respective rights of recourse and obligations of these various parties are provided for by article 2506 of the Civil Code, which is to the effect that: "When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:

1. The restitution of the price.

McKenzie et al. vs. Bacon et al.

2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him. * * *

The last clause quoted from the article shows conclusively that within the intendment of our law, a subsequent vendee can be held liable directly to the owner who evicts him, for any cause, for rents and revenues during his occupancy of the property.

All the foregoing considerations tend together to the irresistible conclusion that appellees, John Chaffe & Sons, are accountable to plaintiffs for the rents and revenues of the property during the whole time of their possession, which dates from the 31st of December, 1879.

It appears that the only portion of the property which bore any fruits consisted of 157 acres of land which they cultivated or rented out, as it suited their purposes, and from the evidence in the record we agree with the district judge that the rental thereof was not worth more than four dollars per acre per annum, or $628 per annum for the entire property of which they had the use and enjoyment.

## II.

On the subject of improvements the testimony is quite conflicting, particularly as to the principal item of defendants' claim on that score, and which consists of the costs of preparing 92 acres of woodlands for cultivation. For that item the district judge allowed $1750, * * but we think that the allowance is excessive. The burden of proof was on the defendants to make out their claim with legal certainty, and in this they have failed.

Considering that the tillable lands are only worth an annual rental of four dollars per acre per annum, and that these woodlands, although burned out, and although some of the logs have been removed, are not yet "ready for the plow," we think that an allowance of two dollars per acre is a very liberal compensation for the labor thus far devoted to these lands. The sum of $920 is allowed for that item. The sum of $84 for seven cotton houses is also allowed. As the evidence does not show that a cabin for which $150 are allowed was erected by the defendants, that item must be rejected.

The allowance of $305 80 for the construction of a levee was properly made.

But all the other items of improvements, consisting of ditching, of rails furnished, of cemented cisterns shown to have become useless, are only ordinary repairs necessary to defendants' cultivation, and to meet usual wear and tear, and cannot be classed as improvements within the contemplation of law. Daquin vs. Dorron, 3 La. 398; Haynes vs. Harbour, 14 Ann. 236.

The amount of $695 28 allowed for taxes is correct.

We therefore cast the account between the parties as follows:

Plaintiffs are entitled to the following rents:

| | | |
|---|---|---|
| For the year 1880, 157 acres at $4 | $628 | 00 |
| Interest at 5 per cent. from Dec. 31, 1880, to Dec. 31, 1888 | 251 | 20 |
| For the year 1881 | 628 | 00 |
| Interest of 8 per cent. from Dec. 31, 1881 | 219 | 20 |
| For the year 1882 | 628 | 00 |
| Interests of 5 per cent. from Dec. 31, 1881 | 186 | 40 |
| For the year 1883 | 628 | 00 |
| Interests from Dec. 31, 1883 | 157 | 00 |
| For the year 1884 | 628 | 00 |
| Interests from Dec. 31, 1874 | 125 | 60 |
| For the year 1885 | 628 | 00 |
| Interests from Dec. 31, 1885 | 94 | 20 |
| For the year 1886 | 628 | 00 |
| Interests from Dec. 31, 1886 | 62 | 80 |
| For the year 1887 | 628 | 00 |
| Interests from Dec. 31, 1887 | 31 | 40 |
| For the year 1888, 15 acres at $7 and $4 for | 673 | 00 |
| Total rents | 6825 | 40 |
| Less one-fifth | 1304 | 28 |
| Net amount of rents and interests | $5520 | 12 |

Defendants are entitled to the following amounts for improvements:

| | | |
|---|---|---|
| For work on clearing lands | $920 | 00 |
| For costs of seven cotton houses | 84 | 00 |
| For costs of a levee | 305 | 80 |
| For taxes | 695 | 28 |
| Total | $2,005 | 08 |
| Less one-fifth | 401 | 01 |
| Net amount of improvements | $1,604 | 07 |

It is, therefore, ordered that the judgment appealed from be annulled, avoided, reversed, and it is now ordered that the demand of plaintiffs for rents be allowed up to the sum of (5520 12) five thousand five hundred and twenty dollars and twelve cents, subject to a deduction of the sum of (1604 07) sixteen hundred and four dollars and seven cents, allowed to the defendants for value of their improvements; and it is, therefore, ordered, adjudged and decreed that plaintiffs do have and recover judgment against the defendants, John Chaffe & Sons, in the sum

of (3916 05) three thousand nine hundred and sixteen dollars and five cents, with 5 per cent per annum interest thereon from December 31, 1888, until paid and costs of suit in both courts.

Mr. Justice Watkins, having been of counsel, recuses himself.