105  405
117  1063

105  405
125  191

## No. 13,582.

### MRS. M. O. RAGSDALE ET AL. vs. W. A. RAGSDALE ET ALS.

#### SYLLABUS.

1. Rescission for the non-payment of the purchase price may be enforced if the parties to the sale can be placed in the same condition as they were "as though the obligation had not existed."
2. The test in a suit between the parties to the sale is :—the return to the purchaser of that portion of the price he has paid (if any) and his complete discharge as to the remainder—the unpaid portion of the price.
3. A general endorsement on negotiable paper may, except as against a *bona fide* holder, be explained and the precise terms of the agreement shown by parol testimony.

APPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Dart & Kernan,* for Plaintiffs, Appellants.

*Boatner, Dodds & Boatner,* for J. R. Abels, Defendant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J. The question which this case presents is whether or not the widow and five of the six heirs of George W. Ragsdale, deceased, may enforce as against the sixth heir, William A. Ragsdale, the resolutory condition implied in a contract of sale entered into between said George W. Ragsdale and the said William A. Ragsdale.

There is dispute as to whether George W. Ragsdale resided in Louisiana or Mississippi, but we think it sufficiently shown he was a citizen of Louisiana.

The property in question, therefore, pertained to the community of acquets and gains existing between himself and Maria Ragsdale, his wife—now widow, and one of plaintiffs herein. It consisted of certain lots of ground and mill plant situated in the parish of Tangipahoa.

In March 1898, by public act passed in Copiah county, Mississippi, he sold the property to his son, W. A. Ragsdale, for the price of $2800, of which $100 was paid cash and eleven promissory notes were given for the remainder.

A mortgage and vendor's privilege to secure these notes was reserved, but there was neglect to record the act in either the conveyance or mortgage records of the parish of Tangipahoa.

In January 1899, George W. Ragsdale died. He left a widow and six descendants, all of age.

William A. Ragsdale did not pay any of the notes representing the purchase price of the property he had bought from his father.

In consequence, this suit is brought against him by the widow and five of the heirs to dissolve the sale for non-payment of the price, first tendering him the $100 paid on the purchase price at the time of the sale and the eleven notes, all matured.

In the interim between the date of his purchase and the maturity of the notes, W. A. Ragsdale was sued in the parish of Orleans, where he resided, by J. R. Abels, and a judgment recovered against him. Discovering the omission of registry of the sale made to his debtor, Abels obtained the original act and caused it to be recorded in the conveyance, but not the mortgage, records of the parish of Tangipahoa.

He also had his judgment registered in the mortgage records of that parish so as to operate a judicial mortgage on the property.

He then caused its seizure under *fi. fa.* and at the sale which followed he became the adjudicatee thereof.

The seizure was made prior to the filing of the present suit, but the adjudication subsequent thereto.

Because of his judgment and seizure of the property in question thereunder, Abels is made party defendant herein.

## I.

W. A. Ragsdale makes no defense. Abels resists, and his principal contention is that the action of revendication being indivisible, it can

only be brought by the vendor holding and offering to return the whole price, or by the subrogee of the vendor similarly situated, or by all the heirs and legal representatives of the vendor similarly situated.

He insists that W. A. Ragsdale, being an heir of G. W, Ragsdale, is a necessary party *plaintiff* to the suit for resolution, and that inasmuch as one of the heirs of the vendor has not joined in the action, the plaintiffs do not represent wholly the vendor, there is lack of unity of all the interests centering in and representing the vendor, and, hence, the action to enforce the resolutory condition does not lie.

Plaintiffs must represent the whole price—is his position—and this they do not do, since W. A. Ragsdale represents his own interest and has not sued.

*Ruling*—If another than W. A. Ragsdale—one, for instance, not an heir of G. W. Ragsdale—were the vendee, and W. A. Ragsdale, representing by inheritance as heir of his father part of the purchase price, stood aloof and did not join in the suit, the force of this argument would be instantly admitted.

But is it applicable here, seeing that W. A. Ragsdale is himself the vendee, who has not paid the purchase price? Is he in a position to make this contention?

If not, neither may Abels, his creditor, for Abels can have no greater rights than his debtor, whose place as to the property he merely takes.

Abels was not a necessary party to this suit. It might have been prosecuted as well without him. If he had been omitted and made himsef a party by intervention, there would pertain to him no greater rights of defense to the action than his debtor, himself, possesses.

The case is, then, to be dealt with as though it were purely a contest between W. A. Ragsdale, the vendee and one of the heirs of George W. Ragsdale, on the one hand, and the surviving widow in community of George W. Ragsdale and his other five heirs, on the other hand.

It would be extraordinary indeed if W. A. Ragsdale, who as heir of his deceased father represents only one-twelfth interest, could purchase from his father, before the latter's death, all the property he owned, neglect or refuse to pay the purchase price, then when, following his father's death, he is sued by the widow and other heirs for dissolution of the sale, he could set up that the action will not lie because he, an heir, is not a party plaintiff!

We do not understand such to be the law of Louisiana, either by the

terms of codal enactments, nor by jurisprudence as established by the decisions of the courts.

We, rather, understand the rule to be that rescission may be enforced if the parties to the sale can be placed in the same condition they were "as though the obligation had not existed."

C. C. 2045; Leflore vs. Carson, 7 La. Ann. 67; Bryant vs. Stothart. 46 La. Ann. 489.

In the latter case, there was, as here, an exception that the plaintiff represented only part of the purchase price still due.

Mr. Justice Miller, as organ of the court, said:—

"The dissolving condition accomplished in the contract of sale places the parties as they stood before the sale. The vendor takes the property back. The purchaser is restored the price he has paid, and is entitled to complete discharge for any part of the price he has not paid. Can this result—i. e., the discharge of the purchaser—be attained in this suit? If not, the action fails."

This, we think, established the true test:—the return to the purchaser of that portion of the price he has paid and his complete discharge as to the remainder—the unpaid portion of the price.

If this can be done in the suit for rescission as brought, the courts will sustain the action.

Applying the test to the case at bar, undoubtedly the discharge of the purchaser can be here attained.

He is tendered the portion of the price which he paid in cash, the eleven notes he gave, representing the remainder of the price, are all in the hands of the plaintiffs and are attached to their petition as part thereof. None of them are outstanding in third hands.

They are here ready to be delivered to him upon the entry of a decree annulling the sale.

Returning him $100 and his notes "restores him to the price he has paid", acquits him of all liability on account of his purchase, and places "matters in the same state as though the obligation had not existed." C. C. 2045.

That is to say, it would reinstate the property in the name of George W. Ragsdale. He being dead, its restoration would be to his succession, his legal representatives, his widow and heirs at law. His succession has not been opened; he has no legal representatives in that sense. The restoration, then, is to the widow in community and his six heirs at law.

The vendee defendant, W. A. Ragsdale, then, would cease to hold the

property in virtue of his purchase, but immediately he would be invested with the ownership of an undivided twelfth interest in his capacity as heir of George W. Ragsdale. Or else, the part he would owe, as heir, of the obligation of the purchase price would be extinguished by confusion—the law giving him his virile share of the property in lieu of his virile share of the debt.

The practical result would be the same.

All parties in interest are before the court—six of them as plaintiffs, one as defendant. This being so, the court is competent to do what the parties could do if they were acting together.

The failure to register this sale in the conveyance or mortgage records does not militate against the right of the vendor to enforce the resolutory condition.

12 La. Ann. 701; 28 La. Ann. 599; 32 La. Ann. 463.

So, too, a vendor by sale unrecorded may rescind as against a subsequent recorded mortgage granted by the vendee. 12 La. Ann. 699.

A vendor may sue for the rescission for non-payment of the price even after seizure by a creditor of the vendee.

7 La. Ann. 25.

And the fact that the property had passed from the vendee into third hands in no manner abridges the right.

32 La. Ann. 462.

The underlying principle is that until the vendee pays the purchase price he holds by a defeasible title only, and all who deal with him are equally affected. Further, that the rescission of a contract of sale, for a cause going back to the origin of the agreement, is not considered as an alienation properly so called, but rather as a return to the former ownership, which has not ceased to exist, or was only suspended.

Ins. Co. vs. Packwood, 9 La. Ann. 87; Toullier, Vol. 4, Nos. 539, 548, 550-Contracts et Obligations Conventionnelles; Mortee vs. Syndic, 8 La. Rep. 83; McKenzee vs. Bacon, 41 La. Ann. 9.

Whatever rights, of course, W. A. Ragsdale is entitled to retain in the property following the resolution of the sale may well be claimed by his judgment creditor and adjudicatee, Abels.

## II.

There is a contention with regard to a ruling of the trial judge on the admission of certain evidence.

The notes which W. A. Ragsdale had given for the greater part of the

purchase price were payable to the order of George W. Ragsdale, the vendor.

He endorsed them all "Pay to the order of M. O. Ragsdale" and signed.  M. O. Ragsdale was his wife.

The petition alleges that endorsement in these words:—"That said notes having been executed and delivered to said George W. Ragsdale he endorsed them to your first named petitioner, as will more fully appear from said eleven notes hereto annexed and made part hereof."

Plaintiffs contend that this allegation of endorsement is not the allegation upon which the action is founded, but is purely descriptive and upon the same lines as the description of the notes, the act of mortgage, etc.

Defendant Abels contends that the effect of the endorsement was to transfer the legal title of the notes to Mrs. Ragsdale, and, hence, the allegation of endorsement is, in effect, an averment of her ownership. He, thereupon, invokes the rule that a mere transferree by endorsement cannot sustain the action of rescission.

In the course of the examination of Mrs. M. O. Ragsdale on the witness stand, she was asked:—

"Did your husband ever give up his ownership in the notes?"

Defendant's counsel objected to the question on the ground that it contradicts the allegation of the petition and of the endorsement on the notes.

The judge ruled that the endorsement of the notes to Mrs. M. O. Ragsdale transferred their title to her and that parol evidence was not admissible after the death of the endorser to explain why the endorsement was made.

Plaintiff excepted.

*Ruling*—The testimony sought to be elicited was admissible.  Plaintiffs sue as surviving widow and heirs at law of George W. Ragsdale. There is a direct allegation that the non-payment of the purchase price of the property entitles them in their capacities as owners of the notes and as widow and heirs of the deceased vendor to rescind the sale.  And the prayer of the petition is that the sale be resolved and the property be returned and restored to them in their said capacities.

These averments and prayer sufficed to admit proof that the ownership of the notes was at the time of his death in George W. Ragsdale, and that their endorsement over to Mrs. M. O. Ragsdale was never in-

tended to transfer the title to her, but for another purpose to be explained.

There was then no attempted contradiction of the allegations of the petition by the question propounded to Mrs. Ragsdale.

And the ground of the judge's exclusion of the testimony is answered adversely to his ruling by Abbott's Trial Evidence, 2nd ed., p. 511, where the proposition is sustained that a general endorsement on negotiable paper may, except as against a *bona fide* holder, be explained and the precise terms of the agreement shown by parol evidence. See also Wood vs. Tyson, 13 La. Ann. 104.

To admit testimony in explanation of the endorsement, as well as for adjustment of the question of rents and revenues, claimed by plaintiffs, and of the privilege on the property asserted by defendant Abels, the case must be remanded.

For the reasons assigned it is ordered and decreed that the judgment appealed from be avoided and reversed, and that the cause be remanded to the court *a qua* for further proceedings according to the views herein expressed and the law—costs of this appeal to be borne by defendant, J. R. Abels.

PROVOSTY, J., takes no part.